# IN THE UNITED STATES DISTRICT COURT FOR
# THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTINA CHAPPELL, AS ADMINISTER OF THE ESTATE OF DELYLE WALTER CHAPPELL, <br><br> *Plaintiff,* <br> v. <br><br> PRECISION DRILLING CORPORATION, *et al.* <br><br> *Defendants*. | CIVIL ACTION <br><br> C.A. No. 3:23-cv-00604-RDM <br><br> PROPOSED ORDER |

**AND NOW**, this _____ day of 2023, upon consideration of Plaintiff's Response in Opposition to Defendant Precision Drilling Corporation's Motion to Dismiss, it is hereby **ORDERED** and **DECREED** that said Motion is **DENIED**.

BY THE COURT:

_____J.

# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTINA CHAPPELL, AS ADMINISTER OF THE ESTATE OF DELYLE WALTER CHAPPEL, <br><br> *Plaintiff,* <br> v. <br><br> PRECISION DRILLING CORPORATION, *et al.* <br><br> *Defendants*. | CIVIL ACTION <br><br> C.A. No. 3:23-cv-00604-RDM <br><br> REPLY IN OPPOSITION |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT PRECISION DRILLING CORPORATION'S MOTION TO DISMISS

Plaintiff, Justina Chappell, as Administer of the Estate of Delyle Walter Chappell, through her undersigned counsel, in compliance LR 7.6 and 7.8, submits the following brief in opposition to Defendant Precision Drilling Corporation's Motion to Dismiss.

## I. INTRODUCTION

Defendant Precision Drilling Corporation seeks to avoid liability for the injuries and death caused to Plaintiff's Decedent, Delyle Walter Chappell ("Mr. Chappell"). Plaintiff has set forth *prima facie* evidence of personal jurisdiction based on Defendant's admitted relationship with Defendant Precision Drilling Company, LP., which served as the prime contractor and/or general contractor on the work site where Mr. Chappell was killed. Plaintiff will not be arguing nor claiming that

Defendant Precision Drilling Corporation is subject to general jurisdiction, but rather, this Court maintains personal jurisdiction as Precision Drilling Corporation is subject to specific jurisdiction based upon its contacts with the forum state and/or its relationship to the Drilling Site where Mr. Chappell was killed. In the alternative, if this Court is persuaded by Defendant's Motion to Dismiss, Plaintiff must be afforded the right to conduct jurisdictional discovery as Defendant's Motion to Dismiss is entirely premature.

Defendants Cabot Oil & Gas Corporation and Coterra Energy, Inc. f/k/a Cabot Oil & Gas Company (hereinafter referred to collectively as "Cabot Oil"), were engaged in the development, exploitation and exploration of the subject natural gas reservoir located in Montrose, PA (the "Drilling Site") and contracted with Defendants Precision Drilling Corporation and Precision Drilling, LP (the "Precision Defendants"). *See* ECF No. 1, Plaintiff's Complaint at ¶¶ 27-28, 31. The work being performed by Cabot Oil and the Precision Defendants involved the use of a Pipe Wrangler, a piece of heavy machinery that is used to transfer pipes between the ground level and the rig floor of the Drilling Site. *Id.* at ¶ 36. Plaintiff further alleges that Cabot Oil, in conjunction with the Precision Defendants employed the individuals who were responsible for the operations and safety obligations at the Drilling Site, as well as established corporate policies and procedures, including safety policies and procedures, for the Drilling Site. *Id.* at ¶ 38.

On April 13, 2021, Mr. Chappell was working within the course and scope of his employment with Frank's International at the Drilling Site. On this date, Mr. Chappell was on the rig floor of the Drilling Site when he was struck with a 40-foot-long pipe which was being transported by the Pipe Wrangler under the control of the Precision Defendants' employees, causing Mr. Chappell's death. *Id.* at ¶¶ 54-64.

Plaintiff initiated this action with the filing of a complaint in the Court of Common Pleas of Lackawanna County which named Precision Drilling Corporation, Precision Drilling Company, LP, Cabot Oil & Gas Corporation, Coterra Energy, Inc. f/k/a Cabot Oil & Gas Corporation, Forum Energy Technologies, Inc., and Forum Energy Services, Inc., on March 10, 2023. Defendant Precision Drilling Corporation removed the lawsuit to the Middle District of Pennsylvania on April 10, 2023. To this date, no fact and/or jurisdictional discovery has been conducted.

## II. ARGUMENT

### A. Legal Standard

When considering a motion to dismiss a complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2), a court assumes the truth of all factual allegations in the Plaintiff's complaint and draws all inferences in favor of that party. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). Once a defendant challenges a court's exercise of personal jurisdiction through a motion to

dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). When a district court exercises its discretion not to hold an evidentiary hearing, a plaintiff need only plead a prima facie case of personal jurisdiction in order to survive a motion to dismiss. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d. 141, 142 n.1 (3d Cir. 1992). To determine jurisdictional questions, the court must also "accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor." *Snow Shoe Refractories LLC v. Jumper*, 2019 U.S. Dist. LEXIS 27169 (M.D.Pa. 2019).

### B. Precision Drilling Corporation is Subject to Specific Jurisdiction

A Federal Court may exercise personal jurisdiction over a non-resident defendant to the extent permitted under a state law. Fed. R. Civ. P. 4(e). Pennsylvania authorizes long-arm jurisdiction to the extent permitted by the due process clause of the United States Constitution. 42 Pa. C.S. § 5322(b). A plaintiff may prove the existence of jurisdiction over a non-resident defendant by showing either that the cause of action arose from the defendant's forum related activities (specific jurisdiction) or that the defendant has continuous and systematic contacts with the forum state (general jurisdiction). *Mellon Bank (East) v. Di Veronica Bros.*, 983 F.2d 551, 554 (3d Cir. 1993).

Determining whether there is specific jurisdiction requires a three-part inquiry. *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 300 (3d Cir. 2008). First, the defendant must have "purposefully directed [its] activities" at the forum state. *Burger King Corp. v. Rudzewics*, 471 U.S. 462, 472 (1985). Second, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities. *Helicopteros Nacionaltes de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). Finally, courts may consider additional factors to ensure that the exercise of jurisdiction otherwise "comport[s] with fair play and substantial justice." *Burger King*, 471 U.S. at 476. The first two prongs of the test "determine whether a defendant has the requisite minimum contacts in the forum State." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). To obtain specific jurisdiction, the contacts need not be extensive, in fact, "[a] single contact that creates a substantial connection with the forum can be sufficient to support the exercise of personal jurisdiction over a defendant." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004).

Defendants argue that Precision Drilling Corporation lacks minimum contacts with Pennsylvania because Precision Drilling "had no employees on site, no oversite or control over the operations, and was not involved in the incident underlying this suit." *See* Defendant's Motion to Dismiss, at 2. Defendant has a duty of candor to this Court and has merely highlighted three characteristics of their conduct that

would lead to the conclusion that they do not have sufficient minimum contacts with Pennsylvania and this underlying suit. Plaintiff alleges that Precision Drilling Corporation "established corporate policies and procedures, including safety policies and procedures (which Precision Drilling Corporation provided to OSHA), for the Drilling Site. *See* ECF No. 1, Plaintiff's Complaint at ¶ 38.

Additionally, it appears that Mr. Goodwin, the Drilling Superintendent, is an employee of Precision Drilling Corporation. All OSHA investigations relating to this accident into Precision Drilling went through Mr. Goodwin.



Mr. Goodwin's LinkedIn page identifies his employer as Precision Drilling Corporation and links to the Calgary, Alberta Precision Drilling entity:







The same can be said with Precision Drilling's Associate General Counsel who handled the OSHA investigation:



When searching for Precision Drilling Corporation or Precision Drilling Company, LP, both take you to their main website which just uses "Precision Drilling."

In its investigation, OSHA lists the "establishment" as "Precision Drilling Corporation." Additionally, OSHA took the statements from a number of "Precision Drilling" employees with no delineation as to whether they worked for Precision

8

Drilling Corporation or Precision Drilling Company, LP, despite identifying the establishment as Precision Drilling Corporation.

| | NARRATIVE |
|---|---|
| Establishment | Precision Drilling Corporation |
| Inspection Number | 1524946 |
| Inspection Dates | 4/13/21 |

According to OSHA.gov, Precision Drilling (Us) Corporation was the entity that was inspected in connection with this incident:

**Inspection Detail**

**Case Status: CLOSED**

**Inspection: 1524937.015 - Precision Drilling Us Corporation**
Inspection Information - Office: Wilkes-Barre

| **Inspection Nr**: 1524937.015 | **Report ID**: 0317700 | **Date Opened**: 04/13/2021 |
|---|---|---|
| **Site Address**:<br>Precision Drilling Us Corporation<br>1007 Hoag Hill Road<br>Montrose, PA 18801<br>**Mailing Address**:<br>2640 Reach Road, Williamsport, PA 17701 | **Union Status**: NonUnion | **SIC**:<br>**NAICS**: 213111/Drilling Oil and Gas Wells |
| **Inspection Type**: Unprog Rel<br>**Scope**: Partial<br>**Advanced Notice**: N<br>**Ownership**: Private | **Safety/Health**: Safety<br>**Close Conference**: 10/14/2021<br>**Emphasis**: L:Oilgas<br>**Case Closed**: 10/14/2021 | |

A critical issue of this case is the implementation, or lack thereof, of Lock-Out-Tag-Out procedures. Precision Drilling provided these policies and procedures to OSHA, and it is labeled with the Precision Drilling Corporation logo. **In fact, every Global Health, Safety and Environmental Management System material provided to OSHA bears the Precision Drilling Corporation logo.**

**Precision** | Lock Out / Tag Out Isolation Log
DRILLING

Description of use: The Lock Out/Tag Out form is required prior to all equipment isolations.
- This form has been developed so that multiple pieces of equipment and authorized persons can use one form.
- If equipment is still locked out at the end of a tour, the LOTO needs to be documented on the crew change handover notes and discussed during crew change. The new crew coming on tour must complete their own form.
- If a lock out becomes long term, ensure that you select the Long Term lock option that creates a corrective action. To record the removal of the lock, the Rig manager must close the corrective action notification within the Admin portal or send the notification to SAP and close the notification within their Corrective Action Report (CAR.)

This logo is the same for their website, Mr. Goodwin, Mr. Bowes, the Precision Drilling CEO, and every C-suite executive. Most notably, a simple google search which takes you to Precision Drilling Corporation's Pennsylvania office, redirects you to the Precision Drilling Corporation website:



The Court must assume the truth of this allegation in the Plaintiff's complaint and must draw all inferences in favor of Plaintiff. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). In Defendant's Declaration of Mike Skuce, this factual allegation is not addressed. Defendant Precision Drilling Corporation is the parent company of Precision Drilling Company, LP. *See* Declaration of Mike Skuce at ¶ 3. In Defendant Precision Drilling Company, LP's Answer to Plaintiff's Complaint, they admit that there were policies and procedures relating to the work being performed. *See* Precision Drilling Company, LP's Answer at ¶ 38. Defendant Precision Drilling Corporation's policies and procedures, or lack thereof being followed, are precisely the types of activities that lead to the finding of specific jurisdiction when Plaintiff's claims "arise out of or relate to" such activities. *Helicopteros Nacionaltes de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984).

Plaintiff alleges that Mr. Chappell was injured and killed while working at the Drilling Site by a pipe was that in control of the Precision Drilling Defendants. Plaintiff further alleges that the drilling operations were controlled by the policies and procedures of the Precision Drilling Defendants, including Defendant Precision Drilling Corporation. In its protest of jurisdiction, Defendant Precision Drilling Corporation has put nothing forward besides the boilerplate and cookie cutter Declaration of Mike Skuce which is silent on the issue of whether Precision Drilling Corporation's policies and procedures were in effect at the Drilling Site, the same policies and procedures Plaintiff alleges to give rise to Plaintiff's claims. This alone is enough to satisfy specific jurisdiction – and Defendant Precision Drilling Corporation has not satisfied their initial burden of proffering evidence to the contrary. For this reason, Defendant's Motion to Dismiss must be denied, or at a minimum, as discussed below, Plaintiff must be granted the opportunity to engage in jurisdictional discovery.

### C. Precision Drilling Corporation is Subject to Personal Jurisdiction as the Parent Company of Precision Drilling Company, LP

In the alternative, if a court does not have specific jurisdiction over the parent corporation under the three-part test described above for specific jurisdiction, a plaintiff still has an alternative method of establishing jurisdiction: establishing that the co-defendant subsidiary's jurisdictional contacts may be attributed to the parent. *Schrotberger v. Doe*, 2022 WL 4072962, at *6 (E.D. Pa. Sept. 1, 2022).

Courts in the Third Circuit have held that if a subsidiary is merely the agent of a parent corporation, or if the parent corporation otherwise "controls" the subsidiary, then personal jurisdiction exists over the parent whenever personal jurisdiction (general or specific) exists over the subsidiary. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018). "The alter ego test looks to whether the degree of control exercised by the parent is greater than normally associated with common ownership and directorship and whether the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent." *Deardoff v. Cellular Sales of Knoxville, Inc.*, No. 19-cv-2642, 2022 U.S. Dist. LEXIS 18444, at *6 (E.D. Pa. Feb. 1, 2022) (quoting *In re Enterprise Rent-A-Car Wage & Hour Emp't. Pracs. Litig.*, 735 F. Supp. 2d 277, 319 (W.D. Pa. 2010), *aff'd*, 683 F.3d 462 (3d Cir. 2012)). "The question of whether an alter ego relationship exists 'should be examined in terms of the legal interrelationship of the entities, the authority to control and the actual exercise of control, the administrative chains of command and organizational structure, the performance of functions, and the public's perception.'" *Simeone v. Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 675 (E.D. Pa. 2005) (quoting *In re Latex Gloves Prods. Liab. Litig.*, No. MDL 1148, 2001 U.S. Dist. LEXIS 12757 at *12 (E.D. Pa. Aug. 22, 2001)).

As part of the inquiry into whether an alter ego relationship exists, the following factors are properly considered: (1) ownership of all or most of the stock of the subsidiary; (2) common officers and directors; (3) a common marketing image; (4) common use of a trademark or logo; (5) common use of employees; (6) an integrated sales system; (7) interchange of managerial and supervisory personnel; (8) performance of business functions by the subsidiary which the principal corporation would normally conduct through its own agents or departments; (9) marketing by the subsidiary on behalf of the principal corporation, or as the principal's exclusive distributor; and (10) receipt by the officers of the subsidiary corporation of instruction from the principal corporation. *Radian Guar., Inc. v. Bolen*, 18 F. Supp. 3d 635, 648 (E.D. Pa. 2014). "No one aspect of the relationship between two corporations unilaterally disposes of the analysis, and the court may consider any evidence bearing on the corporations' functional interrelationship." *Reynolds v. Turning Point*, 2020 U.S. Dist. LEXIS 33163, at *9 (quoting *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 598 (M.D. Pa. 2009)).

Here, it is admitted by Defendant that Precision Drilling Corporation is the parent company of Defendant Precision Drilling Company, LP, yet Defendant spends just half a page discussing the relationship in their Motion to Dismiss. A simple internet search shows the interrelationship between the two entities, and

Precision Drilling Company, LP's nonexistent independence. If one was attempting to contact Precision Drilling Company, LP, or reach their website, one would land on the website of its parent company Precision Drilling Corporation (https://www.precisiondrilling.com). In satisfaction of another factor, the two entities share "common use of a trademark or logo," as, in fact, it is the same logo, same website, same image, **same company**. Ultimately, no factor is more dispositive that the fact that Precision Drilling Company, LP, conducts the business functions (drilling) that Precision Drilling Corporation "would normally conduct." For these reasons, even if stand-alone jurisdiction over Precision Drilling Corporation is absent, jurisdiction is proper over Precision Drilling Corporation as the parent company of Precision Drilling Company, LP. Ultimately, the Declaration produced by Defendant Precision Drilling Corporation is silent on each factor indicated above as well as any meaningful factor concerning the relationship between Precision Drilling Company, LP, and Precision Drilling Corporation as the parent company. As discussed below, at a minimum, Plaintiff must be afforded the opportunity to conduct jurisdictional discovery to bring to light the true extent of Precision Drilling Corporation's exertion of power and control over Precision Drilling Company, LP, and its connection to the underlying suit that led to the tragic death of Mr. Chappell.

**D.	Defendant's Motion to Dismiss is Premature**

In the alternative, if this Court finds that there is some support for Defendant's position that Plaintiff's claims against Precision Drilling Corporation should be dismissed on jurisdictional grounds, Plaintiff respectfully requests this Court to allow Plaintiff to engage in jurisdictional discovery prior to the dismissal of this action.

"If the court is not satisfied by a plaintiff's jurisdictional allegations, the court may allow the plaintiff to take jurisdictional discovery, if the plaintiff has made a colorable or prima facie showing of personal jurisdiction." *Brown v. AST Sports Sci., Inc.*, 2002 U.S. Dist. LEXIS 12294 (E.D.Pa. 2002). The Third Circuit has stated that leave to conduct jurisdictional discovery should be freely granted. *See Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 283-84 (3d Cir. 1994). "As a general matter, discovery under the Federal Rules of Civil Procedure should be freely permitted, and this is no less true when discovery is directed to personal jurisdiction." *Renner v. Lanard Toys*, 33 F.3d 277, 283 (3d. Cir. 1994). ("When a defendant challenges personal jurisdiction, courts generally permit depositions confined to the issues raised in the motion to dismiss. In an appropriate case, we will not hesitate to reverse a dismissal for lack of personal jurisdiction, on the ground that the plaintiff was improperly denied discovery." *Id.*

This case is in its infancy, and Defendant cannot state that their contacts with Pennsylvania are insufficient merely relying upon a Declaration alleging that

Precision Drilling Corporation "had no employees on site, no oversite or control over the operations, and was not involved in the incident underlying this suit." In Defendant's affidavit, there is no mention of (1) the contracts between Precision Drilling Corporation and the other parties to this suit, (2) Precision Drilling Corporation's policies and procedures related to drilling operations, (3) whether such policies and procedures were in effect at the Drilling Site, (4) the revenue derived from this Drilling Site and/or Pennsylvania, and (5) whether Defendant Precision Drilling Company, LP, were bound by and/or implemented the corporate policies and procedures of Precision Drilling Corporation.

## CONCLUSION

Defendant Precision Drilling Corporation is subject to specific jurisdiction in Pennsylvania and/or jurisdiction is proper over Precision Drilling Corporation as the parent company of Precision Drilling Company, LP. At this infant stage of the litigation, Plaintiff has met her burden by presenting a prima facie case that jurisdiction is proper in this forum. Thus, this Court should deny Defendant's Motion to Dismiss. Alternatively, if this Court finds that Plaintiff has not fully met her burden, Defendant's Motion to Dismiss must still be denied and Plaintiff should be permitted to engage in jurisdictional discovery.

Respectfully submitted,

**SALTZ MONGELUZZI BENDESKY**

BY: */s/ Michael A. Budner*
  ROBERT J. MONGELUZZI
  ANDREW R. DUFFY
  MICHAEL A. BUDNER

# CERTIFICATE OF SERVICE

I certify that the above was submitted to all counsel via electronic filing on May 1, 2023.

**SALTZ MONGELUZZI BENDESKY**

BY: */s/ Michael A. Budner*
      ROBERT J. MONGELUZZI
      ANDREW R. DUFFY
      MICHAEL A. BUDNER