IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TRAVIS J. BING, as Administrator of the ESTATE OF DELYLE WALTER CHAPPELL, deceased, Plaintiff** | : | **No. 3:23cv604** |
| | : | **(Judge Munley)** |
| **v.** | : | |
| **PRECISION DRILLING COMPANY, LP; COTERRA ENERGY, INC. f/k/a CABOT OIL & GAS CORPORATION; FORUM ENERGY TECHNOLOGIES; and FORUM ENERGY SERVICES, INC., Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Delyle Walter Chappell died at a natural gas drilling site near Montrose, Susquehanna County, Pennsylvania after being crushed by a pipe being used to case the well. In this action, his estate asserts wrongful death and survival claims against various defendants, including Defendant Coterra Energy, Inc, formerly known as Cabot Oil & Gas Corporation ("Coterra"). Coterra now moves for summary judgment asserting, among other things, statutory immunity under the Pennsylvania Workers' Compensation Act. In opposing the motion, the estate made veiled reference to a unique summary judgment rule in Pennsylvania state practice. For the reasons set forth below, the substantive law

of the Commonwealth compels the entry of summary judgment in favor of Coterra. Plaintiff's reliance on a state rule of procedure is unavailing.

**Background**

Coterra is an oil and natural gas exploration and production company with operations in the Marcellus Shale region of Pennsylvania.[1] (Doc. 64, SOF, ¶¶ 1–3). Coterra routinely enters into lease agreements with landowners in this area, which provides Coterra the right to extract natural gas from beneath the lessors' land. Id. ¶ 18. Producing natural gas from the shale involves drilling through thousands of feet of soil and rock. Id. ¶ 5. To extract natural gas from the shale, Coterra regularly and recurrently hires contractors to construct wells. Id. ¶ 4.

Relevant to the motion for summary judgment, Coterra contracted with Precision Drilling Company, LP to conduct drilling operations for the wells, including the well pad involved in this case. Id. ¶¶ 10, 37. Coterra also contracted with Frank's International to construct natural gas well casings in conjunction with Precision's drilling operations. Id. ¶¶ 11, 57. Casing stabilizes

[1] Unless otherwise noted, this factual background derives from the paragraphs of Coterra's statement of material facts ( "SOF"), (Doc. 64), filed pursuant to the Rules of Court for the Middle District of Pennsylvania ("Local Rules"), which were either explicitly admitted by the plaintiff in its response to the SOF ("RSOF"), (Doc. 73 at ECF pp. 31–49), or are uncontroverted. Where plaintiff filed to controvert a properly supported factual assertion in Coterra's SOF, the court deems that fact admitted. FED R. CIV. P. 56(e); M.D. PA. L.R. 56.1.

the well and protects the water table. (Doc. 65-4, T. Holliday Dep. at 148:16–149:10). It is required by Pennsylvania law. 58 PA. CONS. STAT. § 3217(b) ("To prevent migration of gas or fluids into sources of fresh groundwater and pollution or diminution of fresh groundwater, a string or strings of casing shall be run and permanently cemented in each well drilling through the fresh water-bearing strata to a depth and in a manner prescribed by regulation by the department.")

In April 2021, drilling and casing operations were occurring on the Griffiths Well Pad in Susquehanna County, Pennsylvania. (Doc. 64, SOF, ¶¶ 6, 78). Coterra leased the property where the Griffiths Well Pad was constructed. Id. ¶ 19. Otherwise, it had no employees on site. Id. ¶ 96.

Casing involves the installation of pipes, which are placed after certain sections of a gas well are drilled. Id. ¶ 16. For its drilling operations, Precision Drilling Company set up a drill rig and other equipment, including a hydraulic catwalk called a Pipe Wrangler. Id. ¶ 48. A Pipe Wrangler is a machine used to transfer forty-foot pieces of pipe from the ground level to the rig floor. Id. ¶ 49.

On April 13, 2021 at approximately 1:30 AM, Chappell was working at the Griffiths Well Pad for Frank's International assisting with the casing operations of Precision Drilling and Frank's. Id. ¶¶ 78–79; see also Doc. 1-1, Compl., ¶ 54. At some point, the podium controls for the Pipe Wrangler on the rig floor began to malfunction. (Doc. 64, SOF, ¶¶ 88–89). A decision was made to complete the

casing operations using the Pipe Wrangler's ground level controls. Id. ¶ 90. During these operations, Chappell was crushed between two joints of casing and died from his injuries. Id. ¶ 93; Doc. 65-25, M. Heaton Dep. at 26:18-20; 46:2-8.

Chappell's estate initiated this action in the Lackawanna County Court of Common Pleas. (Doc. 1-1). It was removed to this court on April 10, 2023. (Doc. 1). After a period of discovery and substitution of the estate administrator, Coterra moved for summary judgment.

**Jurisdiction**

In this case, subject matter jurisdiction is conferred by the diversity jurisdiction statute, 28 U.S.C. § 1332(a), because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.[2]

---

[2] Under the diversity jurisdiction statute, "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent[.]" 28 U.S.C. § 1332(c)(2). Chappell was a citizen of Wyoming. (Doc. 1-1, Notice of Removal, ¶ 5). Defendant Precision Drilling Company, L.P. is a limited partnership organized under the laws of the State of Texas. Id. ¶ 6. With a limited partnership, the court must consider the citizenship of all partners for the purposes of diversity jurisdiction. Carden v. Arkoma Assocs., 494 U.S. 185, 195 (1990). The general partner of Precision Drilling Company, L.P. is Precision Drilling Holdings Company, a corporation organized under the laws of the State of Nevada with its principal place of business in the State of Texas. (Doc. 1-1, Notice of Removal, ¶ 6). The sole limited partner of Precision Drilling Company, L.P. is Precision Drilling, LLC, a limited liability organized under the laws of the State of Louisiana. Id. The only member of Precision Drilling, LLC is Precision Drilling Holdings Company. Id. Defendant Coterra Energy, Inc. is a company incorporated under the laws of Delaware and whose principal place of business is in Texas. Id. ¶ 8. Defendant Forum Energy Technologies, Inc. is a company incorporated under the laws of Delaware and whose principal place of business is Texas. Id. ¶ 9. Defendant Forum Energy Services, Inc. is a company incorporated under the laws of Delaware and whose principal place of business is Texas. Id. ¶ 10. Thus, there is complete diversity of

**Standard of Review**

A movant is entitled to summary judgment "when there is no genuine issue of material fact in the case and the moving party is entitled to judgment as a matter of law." Reedy v. Evanson, 615 F.3d 197, 210 (3d Cir. 2010) (citation omitted); see also FED. R. CIV. P. 56(a). "A fact is material if its resolution 'might affect the outcome of the suit under the governing law,'. . . [a]nd a dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Mall Chevrolet, Inc. v. Gen. Motors LLC, 99 F.4th 622, 631 (3d Cir. 2024) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

At this stage, the judge's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. All "facts in dispute," Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 187 (3d Cir. 2015), and all "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up). "[W]hen there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to

---

citizenship. Additionally, Chappell's fatal injuries place the amount in controversy above the jurisdictional limits.

resolve the conflicting versions of the parties." Peterson v. Lehigh Valley Dist. Council, United Bhd. of Carpenters & Joiners, 676 F.2d 81, 84 (3d Cir. 1982). Furthermore, "a court's role remains circumscribed in that it is inappropriate for a court to resolve factual disputes and to make credibility determinations." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) (citation omitted). "[W]here the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Id. (citations omitted).

A motion for summary judgment may also be granted where a moving party demonstrates that the nonmoving party "has not made 'a showing sufficient to establish the existence of an element essential to that party's case . . . on which that party will bear the burden of proof at trial.'" Mall Chevrolet, Inc., 99 F.4th at 630 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (emphasis removed)). After a moving party carries their burden to show the absence of a genuine, material factual dispute, Rule 56 flips the burden onto "the nonmovant to 'go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" Daubert v. NRA Grp., LLC, 861 F.3d 382, 391 (3d Cir. 2017) (quoting Celotex Corp., 477 U.S. at 324 (emphasis removed) (alteration in original)). The non-moving party must "do more than

'simply show that there is some metaphysical doubt as to the material facts." Id. (quoting Matsushita, 475 U.S. at 587).

On that last point, the Local Rules require that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Pursuant to this rule, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." As discussed below, plaintiff failed to controvert Coterra's statement of facts where it counts.

**Analysis**

Coterra raises several arguments in support of summary judgment derived from substantive state law. Only one needs to be discussed at this time. Coterra's argues that it is immune from tort liability as Chappell's statutory

employer. The court agrees. Pennsylvania workers' compensation law compels this result and warrants summary judgment in favor of Coterra.[3]

**1. State Procedural Law Does Not Apply in Federal Court**

Before discussing the text of the Pennsylvania Worker's Compensation Act, 77 PA. STAT. § 1 *et seq.*, some discussion about the Erie doctrine is required. Sitting in diversity, the court applies state substantive law and federal procedural law. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). This federal court must apply the Pennsylvania Worker's Compensation Act as substantive law. At the same time, Rule 56 of the Federal Rules of Civil Procedure supplies the procedural law applicable to Coterra's motion.

In support of its motion for summary judgment, Coterra provided a declaration under penalty of perjury, 28 U.S.C. § 1746, from Ryan Cordes, the general manager of Coterra's Marcellus Business Unit. (Doc. 75-1, ¶ 3). Coterra

[3] Coterra raised the statutory employee doctrine as an affirmative defense. (Doc. 10 at 26, ¶ 2). The assertion of an affirmative defense impacts the summary judgment calculus. "Where the party moving for summary judgment is. . .the party who bears the burden of proof at trial, the standard is more stringent." Nat'l State Bank v. Fed. Rsrv. Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992). Thus, the defendant must support the motion for summary judgment with evidence that would entitle it to a directed verdict if not controverted by the plaintiff at trial. In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (citations omitted). "Once a moving party with the burden of proof makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party comes forward with probative evidence that would demonstrate the existence of a triable issue of fact." Id. at 238 (citing FED. R. CIV. P. 56(e)) (additional citation omitted). For the reasons discussed in this memorandum, plaintiff has not demonstrated a triable issue of fact on the issue of Coterra's immunity.

then relied upon Cordes's declaration in formulating its statement of material facts required under Local Rule 56.1. (Doc. 64, SOF, ¶¶ 1–4, 7–9, 12–13, 17–19, 39, 59, 91). This is not an uncommon practice in the Middle District of Pennsylvania given the language of Federal Rule of Civil Procedure 56(c).

Plaintiff's Local Rule 56.1 response deserves separate attention. In response to many paragraphs of Coterra's statement of material facts, plaintiff answered with variants of: "Admitted only that Defendant Coterra's self-serving declaration makes this claim. It is specifically denied that this declaration provides Defendant Coterra with the right to its requested relief." (See Doc. 73, RSOF, ECF pp. 31–49, ¶¶ 1–2, 4, 7–9, 11–18, 59, 64, 66, 69–70).

With such responses and without directly saying it, plaintiff has invoked Pennsylvania's Nanty-Glo Rule in opposition to Coterra's motion for summary judgment. Under that state rule, applicable at the time of summary judgment, "oral testimony alone, either through testimonial affidavits or depositions, of the moving party or the moving party's witnesses, even if uncontradicted, is generally insufficient to establish the absence of a genuine issue of material fact." PA. R. CIV. P. 1035.2, Official Note (citing Nanty-Glo Borough v. American Surety Co., 163 A. 523 (Pa. 1932); Penn Center House, Inc. v. Hoffman, 553 A.2d 900 (Pa. 1989)). In federal practice, there is no Nanty-Glo equivalent. See Barbato v. Progressive Specialty Ins. Co., No. CV 3:21-732, 2023 WL 2287646, at *1 n.2

(M.D. Pa. Feb. 28, 2023) (Mannion, J.) (collecting cases). And a state procedural rule is still a state procedural rule even when you take off its name tag.

In federal court, depositions, affidavits, and declarations may be used to establish that there is no genuine dispute of material fact. FED. R. CIV. P. 56(c)(1)(A), (c)(4). In federal court, a declaration is competent evidence if it is "made on personal knowledge" and "set[s] out facts that would be admissible into evidence." FED. R. CIV. P. 56(c)(4). In federal court, self-serving affidavits are not always problematic—"[a]lmost any declaration filed by a litigant will be in some sense 'self-serving.'" Timmons v. Bohinski, No. 25-1516, ___ F.4th ___, 2026 WL 2331684, at *4 (3d Cir. Aug. 12, 2026) (citation omitted). In short, if "self-serving" were grounds to disregard a declaration, Rule 56(c)(4) would not exist, and no party could ever support or oppose a summary judgment motion with an affidavit or declaration from anyone on its side.

Cordes's declaration, which sets forth the basis of his personal knowledge and competence, provides facts that would be admissible in evidence such as Coterra's operations, its hiring of contractors, and the number of times Precision Drilling and Frank's International drilled and cased wells for Coterra in Pennsylvania. (Doc. 65 ¶¶ 1–6, 7–22). It meets the requirements of Rule 56(c)(4) and is considered in conjunction with Coterra's motion.

Material matters set forth in Cordes's declaration go uncontroverted. Under the federal rules, the court may grant summary judgment if a party fails to properly address another party's assertion of fact as required by Rule 56(c) and the motion and supporting materials show that the movant is entitled to it. FED. R. CIV. P. 56(e)(3). Plaintiff cannot merely rely on veiled reference to the Nanty-Glo Rule to avoid summary judgment in this case.

**2. Coterra Is Immune as Chappell's Statutory Employer Under Pennsylvania Law**

Moving onto the pertinent substantive state law, Chappell's fatal injuries on a job site triggered application of the Pennsylvania Worker's Compensation Act ("Act") with respect to his employer, Frank's International. Under the Act, Frank's International enjoys immunity from common law tort liability and is not a defendant in this action. See Steets v. Celebration Fireworks, Inc., 335 A.3d 1076, 1089 (Pa. 2025); Herold v. Univ. of Pittsburgh - of the Commonwealth Sys. of Higher Educ., 329 A.3d 1159, 1181–83 (Pa. 2025) (discussing the background of the Act).

Pennsylvania also has a robust body of workers' compensation law regarding statutory employers. The statutory employer doctrine eliminates the possibility of the worker going uncompensated if a contractor fails to ensure that its subcontractor had statutorily mandated workers' compensation insurance.

Feldman v. CP Acquisitions 25, L.P., 325 A.3d 691, 703 (Pa. Super. Ct. 2024), app. denied, 344 A.3d 359 (Pa. 2025) (citing Six L's Packing Co. v. W.C.A.B. (Williamson), 44 A.3d 1148, 1154 (Pa. 2012)). The corollary of this liability is immunity: "a statutory employer 'is immune from suit by an injured worker for common law negligence,' regardless of whether the subcontractor carried workers' compensation insurance that paid the injured worker." Id. (quoting Fonner v. Shandon, Inc., 724 A.2d 903, 904 (1999)); see also Yoder v. McCarthy Constr., Inc., 345 A.3d 668, 691 (Pa. 2025) (McCaffery, J., concurring) (calling on Pennsylvania's General Assembly to impose that requirement before statutory employer immunity may be conferred).

Coterra asserts that one of the statutory employer provisions, Section 302(a), 77 PA. STAT. § 461, applies here. Under Section 302(a) of the Act, "certain 'contractors' bear secondary liability for compensation to injured workers employed by their 'subcontractors'[.]" Six L's Packing Co., 44 A.3d at 1150. Specifically, "a contractor who subcontracts all or any part of a contract and his insurer shall be liable for the payment of compensation to the employes of the subcontractor unless the subcontractor primarily liable for payment of such

compensation has secured its payment as provided for in this Act." 77 PA. STAT. § 461 (citation modified).[4]

The second paragraph defines the key terms. A person is "deemed a contractor" and the other party "a subcontractor" when the person "contracts with another" to "have work performed" which consists of either of two categories:

> (1) . . . (i) the removal, excavation or drilling of soil, rock or minerals. . . or
>
> (2) . . . of a kind which is a regular or recurrent part of the business, occupation, profession or trade of such person[.]

77 PA. STAT. § 461.

Section 302(a) provides definitions in the disjunctive. The section's first category covers work "consisting of . . . the removal, excavation or drilling of soil, rock or minerals[.]" Id.

In this case, the court need not strain to fit the uncontroverted facts into this language. Coterra had a written contract with Frank's International. (Doc. 64,

---

[4] Section 302(a) is one of the three statutory provisions undergirding statutory employer immunity in this case. Under Section 203 of the Act, 77 PA. STAT. § 52, "the statutory employer 'shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe[e.]'" Peck v. Delaware Cnty. Bd. of Prison Inspectors, 814 A.2d 185, 188 (Pa. 2002). Section 203 confers immunity from suit "by placing the statutory employer in the same position as the 'contractual' or 'common law' employer of the injured worker for tort liability purposes[.]" Id. The last piece of the structure, Section 303(a) of the Act, 77 PA. STAT. § 481(a), "makes the workers' compensation system the exclusive remedy for an injured employee seeking redress from an employer for an on-the-job injury." Id.

SOF, ¶¶ 11, 57). Frank's International was hired to do work at the Griffiths Well Pad. Id. Frank's International worked concurrently with Precision Drilling on site. Id. ¶ 79. Frank's International's performed casing work, i.e., assisting with the necessary installation of casing after certain sections of a well were drilled. Id. ¶¶ 14–15, 79. Casing a natural gas well is an integral part of the drilling process, and a natural gas well cannot be drilled without casing. Id. ¶ 14. Coterra would be violating Pennsylvania law if it or its contractors drilled a well without casing. 58 PA. CONS. STAT. § 3217(b). Thus, the work at issue is, in the most literal sense, "drilling of soil, rock or minerals." 77 PA. STAT. § 461. The first category is satisfied on its face.

Even if the first category did not apply, and it plainly does, the result would be the same under the second category. That provision covers work "of a kind which is a regular or recurrent part of the business, occupation, profession or trade of such person[.]" Id. Coterra is in the business of extracting natural gas from shale thousands of feet below the surface of the earth. (Doc. 64, SOF ¶¶ 1, 4; see also ¶ 7 ("As of December 31, 2024, Coterra had approximately 1,135 gas wells producing from the Marcellus Shale formation.")). Coterra's commercial enterprise could not be conducted without drilling and casing wells. Id. ¶¶ 8–9. The work performed by Frank's International as part of the drilling for natural gas

was "a regular or recurrent part" of that business. Id. ¶¶ 14, 57. Therefore, the second categorical definition is also satisfied here.

Chappell's estate has identified no evidence creating a genuine dispute of fact with respect to these statutory definitions. Instead, plaintiff asserts that the contract between Coterra and Frank's International failed to include words like "drilling," "mining," "excavation," "soil," and "rock" unlike the contract Coterra had with Precision Drilling. (Doc. 73 at 1–2). Such an argument misapprehends the law and the facts. Pennsylvania workers' compensation law does not require a contract containing those terms for statutory employer liability and immunity to apply; otherwise that verbiage would have been placed in Section 302(a)'s definitions. The undisputed facts demonstrate that Coterra is deemed a contractor and statutory employer under that section of the Act.

Plaintiff also argues that Chappell was an employee of an independent contractor and there is a genuine issue of material fact as to whether Coterra retained control. Id. at 14–17. The problem with this argument and the corresponding cases cited by plaintiff is that they concern a different statutory employer provision, Section 302(b) of the Act, 77 PA. STAT. § 462. Section 302(a) applies here, its language is clear, and Pennsylvania case law is equally clear that there is no multi-factor control test to apply under that provision. See Six L's Packing Co., 44 A.3d at 1158–59.

Plaintiff also relies on cases like Doman v. Atlas America, 150 A.3d 103, 104 (Pa. Super. Ct. 2016), which benefit Coterra by their reference. In Doman, the plaintiff's decedent worked for a company drilling oil and gas wells under a contract with Atlas Energy. Id. at 104. The decedent's employer paid workers' compensation benefits and his estate sued several Atlas Energy entities in tort. Id. After review, the Superior Court of Pennsylvania affirmed the trial court's application of Section 302(a) and grant of summary judgment to Atlas Energy based on the plain language of the statute. Id. at 109. The same plain language of the statute warrants summary judgment in this case.

Another case championed by plaintiff, Dobransky v. EQT Production Company, 273 A.3d 1133, 1136 (Pa. Super. Ct. 2022), involved a different category of worker injured in drilling for natural gas—a truck driver employed by a concrete company transporting and unloading materials at a well site. Id. at 1136. The Superior Court reversed a trial court application of the second part of the Section 302(a) definition to the facts at summary judgment when it determined that the contractor involved did not demonstrate that transporting and unloading of materials was an aspect of the contractor's business. Id. at 1146–47. In contrast, Chappell was not trucking goods or unloading materials at the Griffiths Well Pad. He was working to case a natural gas well being drilled.

Consequently, Coterra enjoys immunity as Chappell's statutory employer and the motion for summary judgment must be granted. The court need not reach Coterra's other summary judgment arguments that it owed no duty to Chappell. An appropriate order follows.

**Date:** 9/21/26

**JUDGE JULIA K. MUNLEY**
**United States District Court**