**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TRAVIS J. BING, as Administrator of the ESTATE OF DELYLE WALTER CHAPPELL, deceased,** | : | **No. 3:23cv604** |
| **Plaintiff** | : | **(Judge Munley)** |
| **v.** | : | |
| **PRECISION DRILLING COMPANY, LP; FORUM ENERGY TECHNOLOGIES; and FORUM ENERGY SERVICES, INC.,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM ORDER

Before the court is a motion to compel genetic testing filed by the defendants in the above matter. (Doc. 52). The motion will be denied.

**Background**

Delyle Walter Chappell died at a natural gas drilling site near Montrose, Susquehanna County, Pennsylvania after being crushed by a pipe being used to case the well. (Doc. 1-1). In this action, his estate asserts wrongful death and survival claims against the defendants. Id.

The estate responded to interrogatories in this case identifying Chappell's beneficiaries. (Doc. 52-10 at ECF p. 5). Those responses listed a surviving

spouse, Justina, and four minor children, E.A.C. (xx/xx/2009), H.J.C, (xx/xx/2012), C.J.C. (xx/xx/2014), and A.J.C., (xx/xx/2015).[1] Id.

Defendants seek an order compelling E.A.C. and A.J.C. to submit to genetic DNA testing to determine the paternity of A.J.C. (Doc. 52). Defendants argue that there is "concrete, contemporaneous evidence—including sworn statements, authenticated social-media posts, and prior judicial findings—raising a substantial and credible question as to [A.J.C.'s] biological relationship" to Chappell. (Doc. 52-1, Br. in Supp. at 2).

The estate opposes the motion, asserting that the requested relief is "unduly burdensome, intrusive, and utterly impractical" and notes that the children are "outside the custody and control of any party to this litigation[.]" (Doc. 56, Br. in Opp. at 1). The court will go one step further. The motion is meritless.

**Jurisdiction**

Subject matter jurisdiction is premised upon 28 U.S.C. § 1332(a)(1), the diversity jurisdiction statute. The court applies federal procedural law and Pennsylvania substantive law in this case. Chamberlain v. Giampapa, 210 F.3d

[1] Justina Chappell previously served as the administrator of the estate. She was substituted by court order in September 2025. (Doc. 61).

154, 158 (3d Cir. 2000) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Analysis**

Defendants' motion is a discovery motion, governed by the Federal Rules of Civil Procedure. "The conduct of discovery is a matter for the discretion of the district court and its decisions will be disturbed only upon a showing of an abuse of this discretion." Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987) (citing Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983); Montecatini Edison S.p.A. v. E.I. du Pont de Nemours & Co., 434 F.2d 70, 72 (3d Cir. 1970)). The abuse of discretion standard is measured by whether there has been an interference with a substantial right, or that the discovery ruling has led to a fundamental unfairness in the trial of the case. Marroquin-Manriquez, 699 F.2d at 134 (citations omitted).

Under the rules, the court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical . . . examination by a suitably licensed or certified examiner." FED. R. CIV. P. 35(a)(1). "The court has the same authority" under the rules "to order a party to produce for examination a person who is in its custody or under its legal control." Id.

Furthermore, "[a]n order compelling a party to submit to a physical or mental examination 'may be made only on motion for good cause and on notice

to all parties and the person to be examined[.]'" Young v. United States, 311 F.R.D. 117, 120 (D.N.J. 2015) (quoting FED. R. CIV. P. 35(a)(2)). "Good cause" for the purposes of Rule 35 means that "there must be greater showing of need . . . than under the other discovery rules." Schlagenhauf v. Holder, 379 U.S. 104, 118 (1964) (citation modified). Rule 35 examinations "are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule." Id. at 121.

The court reads several limitations prescribed by the rule: 1) it may only order "a party"; 2) to produce a "person who is in its custody or under its legal control" for an examination; 3) when that person's physical condition is "in controversy"; 4) after demonstration of "good cause." All of these limitations preclude an order compelling two children to take a DNA test.

**1) A Party**

Plaintiff is an estate administered under the laws of the State of Wyoming. (Doc. 1-1, Compl., ¶ 4). The claims in this case include those for wrongful death and survival under Pennsylvania law. Id. ¶¶ 127–134.

Under federal procedural law, an action must be prosecuted by a real party in interest except where the action is brought by an executor or administrator. FED. R. CIV. P. 17(a)(1)(A)-(B)). This action is advanced by an administrator, as required by Pennsylvania's wrongful death statute. See 42 PA. CONS. STAT.

§ 8301(a) ("An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another[.]"); PA. R. CIV. P. 2202(a) ("an action for wrongful death shall be brought only by the personal representative of the decedent for the benefit of those persons entitled by law to recover damages for such wrongful death."); see also 20 PA. CONS. STAT. § 4101 (authorizing a "foreign fiduciary"—such as the estate in this case—to institute proceedings in Pennsylvania).

Pursuant to the applicable state statute, only "the spouse, children or parents of the deceased" may benefit from a wrongful death action. 42 PA. CONS. STAT. § 8301(b). Wrongful death proceeds, if recovered, are distributed to "beneficiaries in the proportion they would take [from] the personal estate of the decedent in the case of intestacy and without liability to creditors of the deceased person under the statutes of this Commonwealth." Id. Any proceeds from the survival portion of this action, 42 PA. CONS. STAT. § 8302, belong to the estate and are distributed to the decedent's heirs in accordance with the applicable state law. Heffner v. Allstate Ins. Co., 401 A.2d 1160, 1164 (Pa. Super. 1979), aff'd, 421 A.2d 629 (Pa. 1980) (citing Frazier v. Oil Chemical Co., 179 A.2d 202 (Pa. 1962); Martin v. Swift, 258 F.2d 797 (3d Cir. 1958)); see also Wilson v. Bank of Am., N.A., 48 F. Supp. 3d 787, 796 (E.D. Pa. 2014) (citations omitted).

Therefore, E.A.C., and A.J.C. are only beneficiaries by nature of the various state statutes. They are not parties. The estate is the party contemplated by Rule 35.

**2) Person Who Is in Its Custody or Under Its Legal Control**

To afford relief, E.A.C. and A.J.C. must be in the estate's custody or under its legal control. They are not. The estate exists to maintain this action and distribute proceeds to beneficiaries.[2] The motion falls short on these two limitations alone.

**3) In Controversy**

Given defendants' novel arguments, the court will address the "in controversy" and "good cause" requirements of Rule 35 as well. As indicated above, the estate's claims are asserted, in part, through Pennsylvania's wrongful death statute, 42 PA. CONS. STAT. § 8301. Under Pennsylvania's intestacy laws, the surviving spouse would receive "the first $30,000 plus one-half of the balance of the intestate estate" for the purposes of any wrongful death distribution. 20 PA. CONS. STAT. § 2102(3). The remainder would pass to "the issue of the

---

[2] Defendants filed the motion to compel genetic testing when Justina Chappell was still the estate administrator. Their arguments that Rule 35(a) authorizes an order compelling Justina Chappell to produce her children are now stale. Even if Justina Chappell remained the estate administrator, there is no evidence that E.A.C. and A.J.C. are in her custody or under her legal control.

decedent[,]" 20 PA. CONS. STAT. § 2103(a)(1), in equal shares, 20 PA. CONS. STAT. § 2104(1).

Defendants ostensibly filed the instant motion for DNA testing to prevent A.J.C. from recovering any wrongful death proceeds awarded by a jury in this action or to lessen its overall damages exposure. With respect to challenging paternity, they primarily rely upon the Supreme Court of Pennsylvania's decision in Sitler v. Jones, 334 A.3d 861 (Pa. 2025). (Doc. 52-1 at ECF pp. 12–14).

A.J.C. was born to married parents. Following Sitler, Pennsylvania paternity law is as follows:

> In order to determine the paternity of a child born in wedlock, courts first must determine whether the marriage is intact at the time of the paternity challenge. If so, then the presumption of paternity applies, and dictates that, regardless of biology, the mother's spouse will be the child's parent.
>
> However, the presumption may be rebutted if the putative father produces clear and convincing evidence that: (1) there is a reasonable possibility that DNA testing would reveal him to be the child's biological father; and (2) determining parentage based upon DNA testing serves the best interests of the child, with due consideration for the interests of the potential father as well as the interests of the wife and husband. If the court finds no threshold possibility of paternity, or determines that adjudicating paternity by DNA testing would disserve the relevant interests, then the presumption governs. But if the court finds a threshold possibility of paternity, and determines that the balance of interests lies in assigning paternity based upon the biological truth, the presumption must

> yield, and the court should order appropriate genetic testing to determine paternity of the child.

334 A.3d at 877 (citation modified).

Sitler allows putative fathers to challenge paternity of children born in wedlock. Defendants have pointed to no case that says Sitler's reworking of presumptive paternity can be extended from putative fathers to alleged tortfeasors. For the purposes of this motion, however, the court will regard the defendants as occupying the same position as A.J.C.'s putative father. The court will also presume that the defendants have evidence that there is a reasonable possibility that DNA testing would reveal the putative father to be A.J.C.'s biological father. But this is not the only requirement to put paternity into controversy. Defendants are also required to present clear and convincing evidence that a DNA test is in the child's best interests.

On that requirement, defendants' argument is as follows:

> The record also satisfies the best-interests requirement. There is no intact marital family to protect—Justina admitted she and Decedent "did not live together anywhere after 2014"—and Decedent is deceased. Confirming biological parentage will either secure A.C.'s status as Decedent's child, ensuring the preservation of wrongful-death and inheritance rights, or allow him to establish a legal relationship, including potential support and inheritance, with his biological father and his family. DNA testing will also protect the integrity of the judicial process by ensuring wrongful-death proceeds are distributed in accordance with actual heirship rather than assumption.

> Because the evidence satisfies both elements of the Sitler test—demonstrating a strong factual basis for potential non-paternity and showing that truth-finding aligns with the child's best interests—the marital presumption must yield, and genetic testing should be ordered.

(Doc. 52-1 at ECF p. 14) (citation modified).

The record does not satisfy the best interests requirement. In Justina Chappell's deposition, she disclosed that the individual that the defendants suspect is the biological father of A.J.C. was incarcerated for sexually abusing A.J.C.'s sisters. (Doc. 52-11, 21:10–22:15; see also Wallentine v. State, 581 P.3d 711 (Wyo. 2026) (mem.) (affirming the trial courts sentence of 8 to 15 years of incarceration, to be served consecutively, on eight counts of sexual abuse of a minor)). Per Justina Chappell, these events, among others, caused her to abuse drugs. (Doc. 52-11, 20:21–22:15). At the time of her deposition, the children were residing in a different state pursuant to a court order placing the children in non-biological kinship care. (Id., 22:16–25:6).

While there is no intact marital family to protect for various reasons, including Chappell's death while drilling a natural gas well, defendants' attempt to repackage the putative father as a source of support and inheritance is disingenuous. The court has no evidence demonstrating that the putative father took steps to establish paternity of A.J.C. in the Wyoming courts. And the record reflects that the putative father is serving decades in a Wyoming state prison for

sexual abuse. Where defendants seek an order shifting paternity to a sex offender to eliminate paying wrongful death damages to a child, no best interests standard would ever be satisfied.

Accordingly, this 29th day of September 2026, for the reasons set forth above, defendants' motion to compel genetic testing, (Doc. 52), is **DENIED**. By way of separate order this matter will be set for a pre-trial conference.

**BY THE COURT:**

**JUDGE JULIA K. MUNLEY**
**United States District Court**